## ISAACS v. SKRAINKA et al., Appellants.

| 95 | 517 |
|---|---|
| 101 | 242 |
| 40a | 626 |
| 95 | 517 |
| 44a | 78 |
| 95 | 517 |
| 52a | 534 |
| 95 | 517 |
| 114 | 119 |
| 95 | 517 |
| 79a | 397 |
| 95 | 517 |
| 161 | 621 |

1. **Practice**: EVIDENCE, WEIGHT OF. Where the witnesses are equally credible, the positive evidence of some, that a certain thing was said, is of more weight than that of others who say they did not hear the alleged statement.

2. ———: SPECIFIC PERFORMANCE: MISREPRESENTATION. It is sufficient to defeat the specific performance of a contract that the party seeking its enforcement made a material representation concerning its subject-matter which was untrue, and was relied upon by and misled the other party. It need not have been made with an intent to deceive.

3. **Specific Performance**: CONTRACT TO CONVEY REAL ESTATE: MISREPRESENTATION BY VENDOR. The specific performance of a contract to convey real estate will not be enforced, where the vendor made misrepresentations as to the existence of outstanding tax bills against it.

4. ——:——:——: QUIT-CLAIM DEED. The fact that the conveyance was to be by quit-claim deed will not enable the vendor to say that the purchaser did not rely on his representation, or prevent the latter from avoiding the sale, if the representation was false.

5. ——:——: IMPERFECT TITLE: PRACTICE. While the specific performance of a contract for the conveyance of real estate will be refused, where the title is imperfect and that defence is interposed, it may be enforced if the title be perfected before judgment or decree.

*Appeal from St. Louis City Circuit Court.*—HON. AMOS M. THAYER, Judge.

REVERSED AND REMANDED.

*David Goldsmith* for appellants.

(1) The mere fact that plaintiff's title is imperfect debars him from the remedy sought in this case. (*a*) The bargain was in fact made upon the basis of perfect title in the respondent. (*b*) The mere provision in the contract of sale, that the conveyance of the property sold should be made by quit-claim deed, does not detract from the right of appellants to good title, freed from any encumbrance, other than the taxes, of which they, in express terms, assumed the payment. *Washington v. Ogden*, 66 U. S. 456; *In matter of Hunter*, 1 Edw. Ch. 1; Waterman on Spec. Perf. 528, 414; 1 Sugden on Vendors [Perkins' Am. Notes], 24, note *b*, p. 511; *Shepherd v. Kealley*, 1 C. M. & R. 117; *Cross v. Noble*, 67 Pa. St. 78; *Goettal v. Sage*, 10 Atl. Rep. 891. (2) The concealment by respondent of the fact that the special tax bills for street improvements were outstanding, and that suits were pending thereon, is a sufficient defence to the present action. Waterman on Spec. Perf., secs. 298, 299, 361; *Bascomb v. Beckwith*, 8 L. R. Eq. Cas. 100; *Hetfield v. Willey*, 105 Ill. 286; *Shirley v. Stratton*, 1 Br. Ch. 440; *Broad v. Manton*, 12 L. R. Ch. Div. 131;

*Heywood v. Mallalien*, 25 L. R. Ch. Div. 357. (3) The defence of fraudulent misrepresentation is sustained. (*a*) The testimony of the witnesses for appellants outweighs that of the witnesses for respondent, even if the evidence of the parties to the suit be disregarded. *Henze v. St. Louis*, 71 Mo. 639 ; *Still v. Hindekopers*, 17 Wall. 394. (*b*) But, even if the evidence of respondent counterbalances that of appellants, which is the utmost that can be claimed with any show of reason, the decree should, in this suit, be for the appellants. *Veth v. Gierth*, 92 Mo. 104, 105 ; *Hetfield v. Willey*, 105 Ill. 286 ; *Broad v. Manton*, 12 L. R. Ch. Div. 131 ; *Race v. Weston*, 86 Ill. 94, 95 ; Kerr on Fraud and Mistake [2 Ed.] 414, 415.

*W. C. Marshall* and *Collins & Jamison* for respondent.

(1) This court will defer largely to the findings of fact by the lower court. *Chapman v. McIlwrath*, 77 Mo. 38 ; *Hendricks v. Woods*, 79 Mo. 590; *Erskine v. Loewenstein*, 82 Mo. 301. And will not interfere with such findings unless they are manifestly wrong. *Ford v. Phillips*, 83 Mo. 523 ; *Judy v. Bank*, 81 Mo. 404 ; *Snell v. Harrison*, 83 Mo. 652. (2) The agreement of defendants was to take the title of plaintiff to the property in the condition it was, on the day of sale, subject to all incumbrances, liens, and defects. This is the plain meaning of the clause that Isaacs would convey by a quit-claim deed. (3) There is no foundation for appellants' contention that the bargain was made on the basis of a perfect title in respondent, nor that the title being imperfect debars plaintiff's recovery, nor that appellants were entitled to a "good title, freed from any incumbrance," etc. On the contrary, a quit-claim deed only puts the purchaser in the shoes of the seller, vesting in the purchaser only such title as the seller has. If this were not true there would be no difference between a

warranty and a quit-claim deed. (4) Isaacs was not obliged to disclose any defects in the title. The parties were adverse parties, actually engaged in legal warfare, dealing at arm's length. Besides, the provision in the contract for a quit-claim deed was sufficient notice to the purchaser to put him on his guard and to cause a prudent man to make inquiry about the title. It was an express notice that Isaacs would not be responsible for any defects in the title. *Holland v. Anderson*, 38 Mo. 55; *Bailey v. Swick*, 61 Mo. 213; *Dunn v. White*, 63 Mo. 181. (5) The defence of fraudulent misrepresentation is not sustained. The testimony of appellants' witnesses does not outweigh that of respondent's, and the two cases cited by appellants' counsel do not and manifestly could not decide any such a proposition. (6) It is not true that if the evidence in this case on the subject of fraudulent misrepresentation is equally balanced, that the decree should be for defendant. Quite the contrary is true. The burden of proving the affirmative defence of fraud is on the appellants. They admit the contract but seek to avoid it. If they have not made out an avoidance by a preponderance of testimony, the plaintiff is entitled to a decree on the undisputed evidence of the contract and on defendant's admission of the contract.

BLACK, J.—This is a suit brought by Isaacs for the specific performance of a written contract, dated February 17, 1882, and signed by the parties therein named. The contract is in the following words: "William Skrainka and Claus Vieths agree to take all the property of J. L. Isaacs now proceeded against on special tax bills in their favor and against said property, before Justice Taaffe and in the circuit court, city of St. Louis, at fourteen hundred dollars, and J. L. Isaacs agrees to convey to them said property by quit-claim deed for said sum."

There were suits pending before the justice and in the circuit court to enforce tax bills against sixteen lots, owned by Isaacs. Skrainka and Vieths, the present defendants, were the owners of the tax bills, and were the plaintiffs in those suits. One of the suits was on trial in the circuit court, under an agreement that the others should abide the result of that one. During the trial the contract in question was made in settlement of the pending litigation. About two weeks thereafter, Isaacs tendered defendants a quit-claim deed, and demanded the fourteen hundred dollars; but defendants refused to accept it, and refused to pay the amount. Isaacs now tenders the deed with his prayer for specific performance.

The substance of the defence is, that there were other outstanding tax bills against the property for other improvements, amounting to about one hundred and fifty dollars; that Isaacs fraudulently concealed the existence of these tax bills, and represented the property to be free from such liens. The contract sued upon was made under these circumstances: One of the defences made by Isaacs in the tax bills suits was, that they amounted to more than the value of the property. He produced a witness who valued the property at five dollars per front foot, and thereupon the defendant proposed, in open court, to take the property at that price. The property has a frontage of four hundred feet, making the offer two thousand dollars. Isaacs accepted the proposition. The court took a recess until two p. m., to give the parties time to settle. Then defendants insisted that these tax bills, amounting to about fourteen hundred dollars, should be deducted, but Isaacs did not understand the proposition in that way, and the parties separated without coming to a settlement. After recess the attorneys undertook to settle the matter. Propositions were made and rejected, and finally these defendants agreed to give

Isaacs fourteen hundred dollars net for the property and the foregoing contract was then executed.

It is an undisputed fact that there were, at the date of the contract, other outstanding tax bills against some of the lots, amounting to about one hundred and fifty dollars, for improvements on Jefferson avenue. The evidence on behalf of defendants, as to the representation made by Mr. Isaacs, is, in substance, as follows:

Judge Rombauer, who represented Skrainka and Vieths, says: "My recollection is that I asked Isaacs if the improvements on Jefferson avenue were paid for, and he said they were; that Skrainka wanted a warranty deed, and Isaacs said he, himself, had only a quit-claim deed; that his counsel said he could not properly give a warranty deed, as these defendants were to pay their own tax bills."

Mr. Vieths testified that Isaacs refused to give a warranty deed, because he had purchased the property at a sheriff's or assignee's sale; that Isaacs said his quit-claim deed was as good as a warranty deed, except for taxes of 1882, and the tax bills held by the present defendants. Mr. Skrainka says he went out into the hall, and there said to Isaacs that he wanted a clear title, and Isaacs said the title was clear; that they then had a conversation about taxes for 1882; that, upon the advice of Rombauer, he withdrew his objection to a quit-claim deed, on the assurance of Isaacs that the property was clear; that he asked Isaacs if all the improvements had been paid for, and he said they had. The evidence of a son of Skrainka is to the same effect.

On the other hand, Mr. Isaacs says the conversation in the hall occurred while they were passing out of the courtroom, and did not last more than two minutes; that he simply spoke to the parties; was asked nothing about, and said nothing about the property being free from other liens; that he did not say a quit-claim deed would be as good as a warranty deed, because he did

not know the difference between the two forms. He says Skrainka and Vieths were to pay the taxes for 1882. Mr. Collins says he thinks he heard all that was said in the hall, and that he heard nothing said about other incumbrances against the property; that it was after the recess of the court that Skrainka wanted a warranty deed, and that Mr. Marshall then took charge of the matter. Mr. Marshall, who represented Isaacs, says he was with the parties until they separated; that he heard no conversation in the hallway; that when he came back in the afternoon, he and Rombauer settled the matter; that Judge Rombauer and Skrainka yielded the point about a warranty deed, and the taxes of 1882; and that he heard nothing about other improvements having been paid for, and did not know of the existence of those tax bills.

The defendants in taking the property at fourteen hundred dollars subject to their tax bills and taxes for 1882 were to pay the full value of the property. They had information that led them to believe that work had been done for which other tax bills could be issued. It is conceded on all hands that the taxes for 1882 were considered, and it is reasonable to believe that other incumbrances were spoken of; and the fact that Isaacs would not make a warranty deed makes it the more probable that inquiry was made in respect of other incumbrances. Three witnesses say that Isaacs said the property was free from such liens. He denies that he made the representation, and two witnesses, who were in a position to hear, say they heard no such representations. It is a familiar rule that where the witnesses are equally credible, the positive evidence that a given thing was said is of more weight than that of others who say they did not hear the alleged statement. *Henze v. Railroad*, 71 Mo. 639.

Giving to the finding of the court due consideration, still we can come to no other conclusion than this, that

Mr. Isaacs did lead the defendants to believe the property was free from other liens, and that this led them to agree to take a quit-claim deed. While the representations may not be such as would support an action at law for fraud and deceit, still it must be remembered that this is an action for specific performance prosecuted by the vendor. Fry says: "In equity, however, it furnishes a good defence to a suit for specific performance, that the plaintiff made a representation which was not true, though without knowledge of its untruth, and this even though the mistake be innocent." Fry on Spec. Perf., sec. 432. This distinction is pointed out in *Dunn v. White*, 63 Mo. 182. It is held that it requires much less strength of case on the part of a defendant to resist a bill to perform a contract than it does on the part of the plaintiff, to maintain a bill to enforce specific performance. *Velh v. Gierth*, 92 Mo. 97. To defeat the specific performance of a contract it is enough that the representation was material, was actually untrue, was relied upon, and did mislead the other party. It need not have been made with an intent to deceive. Pom. Spec. Perf., secs. 217, 218.

We do not think the fact that defendants were to take a quit-claim deed is of any controlling importance. Fry says: "The circumstance that the vendor sold 'with all faults,' though it may serve to put the purchaser on his guard, will not enable the vendor to say that the purchaser did not rely on his representation, or prevent the purchaser from avoiding the sale, if the representation was false." Fry on Spec. Perf., sec. 455. Our conclusion is, that the plaintiff is not entitled to specific performance so long as the property remains incumbered by these tax bills, amounting to a hundred and fifty dollars or thereabouts. As the judgment must be reversed, the cause will be remanded; for while the title may not have been perfect when the suit was commenced,

still specific performance may be decreed, if the title be perfected before judgment or decree. *Luckett v. Williamson*, 37 Mo. 389.

Judgment reversed and cause remanded. All concur.